Case number 18-5840, Jeffrey Queen v. City of Bowling Green, et al., oral argument not to exceed 15 minutes per side. Jason Bell for the appellant. You may proceed. Good morning, Your Honors. My name is Jason Bell. I represent the City of Bowling Green, the appellant's City of Bowling Green, and Dustin Rocker individually. I have reserved three minutes for rebuttal. This is an appeal, an interlocutory appeal, of a denial of qualified immunity by Judge McKinley at the Western District of Kentucky. Jeff Queen is the appellee. He was employed with the City of Bowling Green at their fire department from 2011 to 2016, about four and a half years. His claims in this case are that he was subjected to a hostile work environment, that he was retaliated against for an alleged report that he made, and that he was constructively discharged or, in essence, forced to quit. Mr. Queen is Caucasian. He's married with two kids. He's never been Muslim. He's never been LGBT. He is what I would call a secret atheist, and I say it that way because three times in his deposition, he testified that he never told anyone at the BGFD that he was an atheist. As this court is well aware, religious beliefs are not visible. They're not readily ascertainable. Unless I tell you what my faith is, you're not going to know it, right? And also, Mr. Queen did things that led his co-workers to believe otherwise. He attended Bible studies outside of work. He attended a Bible study at work. He initiated religious conversation. He participated in those type of activities. On his employment application, he put that he went to high school at the Family Christian Academy. This culture is a little bit different than mine in your workplace, perhaps. These guys live together, work together, eat together, grocery shop together like firemen do. They would have talked about these things. They would have known these things. There's a certain amount of locker room talk, political talk, religious talk that goes on with a bunch of 20- and 30-something-year-old men at a fire station. Queen claims that he was subjectively offended when people did things like ask him to church, ask if he knew God, ask if he wanted to go to a Bible study. One thing that did not happen in this case, there was no material adverse employment action. They made fun of his last name, didn't they? I think they did. That's different than religion. I think that's one of his allegations, yes, sir, that they asked him about Queen being his last name. That's the LGBT- And didn't that lead to the other comments, the other anti-LGBTQ comments? I think that he did have allegations that there were other ones, yes, Judge. How do you deal with that? I'm sorry? How do you deal with those comments? Well, I think Judge McKinley dismissed those, so those are not part of this appeal. If I recall. So the retaliation claim doesn't involve those comments at all? I don't think so. The retaliation claim deals with Rockroar, and Rockroar supervised him in 2011 and 2012, three-and-a-half years before he left employment there. I don't think those comments are in any way – there's no nexus between those comments and what happened in my opinion. When he went to Rockroar, he wasn't complaining about any of the anti-LGBTQ comments? He says that he – now, and I need to say this too. Certainly I'll answer any question the court asks, but that is a disputed issue of facts. Certainly we have to take Queen's version on this appeal. Okay, suppose we take that version then. I think he said yes. So he's alleging that Rockroar dismissed him because of those types of comments, or said you need to find employment elsewhere because of those comments. That's his version. Okay. Yes, that is. There was no denial of promotion. He was never fired. He was never denied a raise. No negative performance evaluation ever. I mentioned that we're here to talk about issues of law. On qualified immunity, it protects, as Malley v. Briggs tells us, all but the plainly incompetent and those who knowingly violate the law. We can be wrong. We can be mistaken. It's designed to give government officials breathing room. The plaintiff has the burden once we raise the defense. White v. Polley, we cite in our brief, contains some important language for us. The Supreme Court basically said we're seeing too many denials of qualified immunity. And it was, in essence, a mandate to lower courts to put more teeth in the qualified immunity defense. An issue that I think is very important on this appeal, one thing this court can consider, pursuant to Roberson v. Torres, a Sixth Circuit 2014 case, an appeal for the legal issue of, quote, whether the district court properly adopted plaintiff's version of the facts. We admit that you have to take plaintiff's version of the facts. We do not admit that you have to take plaintiff's counsel's version of the facts. And that is no slam against Ms. Henry, who I like very much. But Judge McKinley, I don't think any of us can look at this opinion and say that this is how we want a summary judgment issue decided. He looked at the complaint as his sole source of the facts. There are 21 references to the complaint. There is one reference, ironically, to a deposition. It dealt with the FMLA claim, which is dismissed and is not part of this appeal. But, for example, he says, however, Queen presents facts that contradict these statements. The complaint says, and then cites to complaint paragraph 23 and says, the court must assume as true that Queen publicly acknowledged that he was an atheist. That flies right in the face of Jeff Queen's own testimony. So what we have here is a discrepancy between what the client testified to and what we put in an attorney-drafted complaint. Yes, Your Honor. We're talking here about immunity under Kentucky law or Kentucky statute, correct? I think we have asserted both qualified immunity under federal and state law, yes, Your Honor. Well, tell me what you see this lawsuit as being legally. I mean, what are his claims, what are your responses? Okay. His first claim is hostile work environment. Under what? The Kentucky Civil Rights Act. Okay, that's a state claim. Yes. Does that claim mirror the federal Title VII claim? Absolutely. All the law says that it mirrors a Title VII claim. The key there, to me, is it has to be based on religion. If our and all of the firefighters testified they didn't know he was an atheist, he testified that. Well, now you're talking about the merits, which is not before us. I'm just trying to get my hands ultimately on what the nature of the claim immunity is, and I'm using the overall structure of the lawsuit to get me there, okay? Yes, absolutely. So what else does he claim? Well, he has a constructive discharge claim. That is under what? The Kentucky Civil Rights Act, I believe. Okay. I thought they said that that isn't a separate claim, it's a consequence of the hostile environment or some other cause of action. Agreed. And if there's not a hostile work environment claim, there's not a constructive discharge claim. I think that's right. And then the last one is retaliation, which also is a state statutory claim, is what they pled. And the retaliation is both against the city and against Rock Roar? Yes. So, so far we don't have any federal claims, but you tell me that you claim federal immunity. They also asserted a FMLA claim. That claim was dismissed by Judge McKinley. But that's why we removed the case to federal court, because that claim was present. Okay. What are the elements of the immunity you claim? Well, there are two. There are two bases. One is their violation of law, and secondly, was that right clearly established? Right? And then we also allege state law immunity under the Kentucky Claims Against Local Governments Act. That applies to the city. That's KRS 65-2003. And it applies to any claim for discretionary acts. They have admitted that Rock Roar's decision in how and whether to respond to a complaint is a discretionary act. And then we also claim Kentucky qualified official immunity in Kentucky for Rock Roar individually. So we have claimed immunity on all of those bases. But with regard to the city, you have at least potentially all of the activities once he does make first the anonymous complaints and the other complaints, and that strings out up to the time he quits. With regard to Rock Roar, was there any statute of limitations problem, or did you raise it? Because it looked like Rock Roar, nothing that he specifically did was after 2012. That's correct. I think the argument, I raised this argument in my brief. I didn't raise a limitations argument. I did raise this temporal proximity argument that you're making, that it was four years roughly, or three and a half at least, after when he left. Well, but that's with regard to the constructive discharge. With regard to Rock Roar specifically, as I read it, and I'll ask your colleagues as well, there's the, you know, you've got to get right and I'm going to make you talk to the chief, and then there's the tripping incident. Clearly, if, for example, he complained and then he beat him up for complaining, that would be a valid claim, right? Right. But am I right, there's nothing after 2012 with respect to Rock Roar? That is my understanding.  No, no, I'm still not. I do not really understand the nature of the immunity that is being claimed. It sounded to me like you said, well, what's the nature, what are the elements of the immunity defense here? Okay. I'm asserting qualified immunity. You've got the burden of proof on this. Well, I think once I raise the defense, they do, right, on qualified immunity? I'm not arguing with the court. I'm just saying I think once I raise the defense, I think they have the burden. The defendant would have to establish qualified immunity. I mean, the immunity is, I'm not liable because. Yes, I can certainly tell you, and maybe I didn't articulate it clearly, if there's no violation of law, which since we did not discriminate based on religion because we didn't know, right, you can't discriminate against me if you don't know what I am. You're telling me the elements. You're telling me what you claim maybe happened. I want to know the elements. What do you have to prove? What does he have to prove? What do you have to prove? Okay. We have to show that there is no violation of law or that the right was clearly established under any, that's the federal standard. Under the state standard, we have to show that our acts were discretionary, right? They've admitted rock wars are. I don't think they admitted. So if you violate the State Civil Rights Act, but you were operating in a discretionary area, you have no liability? Unless you acted in bad faith. I'm sorry? Unless you acted in bad faith. And that's an issue here, too. I don't think there's any proof of bad faith. They make that allegation, but I don't think there's proof. They have to show that rock war in particular acted in bad faith. Qualified immunity attaches. Can I ask one more question? No, I'm happy for you. What would you consider to be bad faith? What would be an example of bad faith? I think what Judge Boggs said there, you know, they beat him up or they do something. I'll tell you what is not bad faith is what they allege. That is this idea of losing your job. There is a case that talks about that very thing, Lewis Smith v. Western Kentucky University. It's a 2015 case right out of our jurisdiction, right out of Bowling Green, where an African-American lady, they told her twice to go get another job, and the court found that that was not discrimination. It was not a hostile work group. What court was that? I'm sorry? Sixth Circuit or Kentucky? It was a Western District case, I believe. I can pull it to make sure, but it is a 2015 decision, and they told her twice to do that, and the court said she could have just walked away. If she didn't like the job there, she could have just walked away. But that particular issue has been litigated and was found not to be. So I think something like what Judge Boggs alluded to would be an example of bad faith. So the only allegations here you're claiming against Rockroar is that he listened to Mr. Queen's complaints, said it's not working out here. You probably should look for another place. Absolutely. I think that's the nature of their claim against Rockroar. And I think he scheduled a meeting, maybe with the fire chief, and then that meeting never happened, and that's, I think, the allegations. I don't have any more questions. Okay. My time is out, so I'm supposed to sit down, I think. Yes, you are. Thank you. Thank you. May it please the Court, my name is Michelle Henry, and I represent the plaintiff, appellee in this case, Jeffrey Queen. Mr. Queen asked the Court to deny jurisdiction to hear the city's challenge to the summary judgment decision below because it is not permitted to make a qualified immunity argument. Qualified immunity is a personal defense that is available only to public officials acting in their individual capacity. He further asked the Court to affirm the district court's decision denying summary judgment to Dustin Rockroar. Mr. Rockroar is not entitled to qualified immunity because he violated Queen's clearly established statutory right to be free from retaliation for engaging in protected conduct under Kentucky's Civil Rights Act. After the district court's summary judgment decision, there are just three remaining claims against the city. Hostile work environment based on Mr. Queen's religion in violation of the Kentucky Civil Rights Act, retaliation also in violation of the Kentucky Civil Rights Act, and constructive discharge, which is really an element of the hostile work environment claim. The city filed an interlocutory appeal based solely on the denial of qualified immunity. Because municipalities are not entitled to qualified immunity as a matter of law, this court does not have jurisdiction to hear the appeal by the city. This court, as well as every other circuit and the Supreme Court, have held that qualified immunity is a defense that is inapplicable to municipalities. Most recently in Pollard v. City of Columbus in 2015, this court held that because a municipality is not entitled to qualified immunity, the collateral order doctrine does not extend to summary judgment orders on municipal liability claims. That is consistent with multiple decisions in 2014 by this court, United Pet Supply v. City of Chattanooga, where the Sixth Circuit stated we have always understood qualified immunity to be a defense available only to individual government officials sued in their personal capacity. And also in 2014 in Benison v. Ross, the court made a similar finding. In 2013 in Hidden Village LLC v. City of Lakewood... Counsel, then let me take you to Rock Roar. Sure. With respect, we had controversy with your colleague about state federal standards here. Can you help me? Because on the one hand, it seemed to be saying if it's discretionary act at all, then you have immunity. The federal standard query is that incorporated is was it clearly established? So can you help me there first with what do you think the standard is for him? And then secondly, why is it or is it not discretionary or is it or is it not clearly established, not just generically, but the kind of response that Rock Roar made would be clearly retaliation? Certainly. Let me start with the Claims Against Local Government Act, which is the state immunity that they reference with respect to discretionary acts. Their analysis of CALGA, the Claims Against Local Government Act, is incorrect. The Kentucky Supreme Court... That is a Kentucky state statute, clearly, 65.200. The Kentucky Supreme Court is the final arbiter of the intent and meaning of Kentucky statutes. And the Kentucky Supreme Court has addressed this. In Schwindel v. Meade County, a 2003 case, the Kentucky Supreme Court explained that Section 1 of CALGA, which contains the definitions for the statute, is applicable to the rest of the statute, including the section they cite, 65.2003. And in Schwindel, they held that CALGA applies to actions in tort. And they said in action... I think we understand your argument on that, on the state. Let's focus on the individual. Certainly. Well, there are a couple of issues with respect to the Claim Against or the Qualified Immunity Argument. First of all, the Qualified Immunity Argument is only appropriate if there aren't any disputed issues of fact. And although Mr. Bell conceded Mr. Queen's set of facts today, that hasn't happened in any of the briefing. There are disputed issues here. And that goes back to the 2012 situation where Mr. Queen complained to Dustin Rockroar about various comments, based both on religion and gender, in the workplace, and that he found those to be inappropriate. As a response, immediately, Mr. Rockroar told him that he needed to know his place. Within 24 to 48 hours, he told Mr. Queen that he and the chief had talked about it and thought that Mr. Queen needed to find other employment. When Mr. Queen came back to work on his next scheduled shift, Mr. Rockroar told him that he needed to meet the chief. The question is, to me, you've got a personnel problem, justified or not, in the firehouse. Correct. In responding to it in query, saying that you ought to get your head right, in effect, and we might have a meeting and you might want to find other employment, isn't firing him. It isn't threatening him with firing him. It may be unpleasant. He responds ultimately, okay, I'll get right, and they go on their way. So the question is, in what way is that clearly established violation of his rights, such that any reasonable officer would know that he was violating his constitutional rights, if that's the standard? Or alternatively, why isn't it discretionary in the sense you've got a problem, how do you deal with it? You talk to people, you do something, maybe you talk too much, maybe you don't. But why doesn't it fit into one of those two standards? And I started my question by saying, which is the right standard? So am I right about both of them, or only one, or what do you say? Well, qualified immunity here, the standard is that it has to be a violation of a clearly established right. Okay, good. Yes. We're okay on that. Okay. And so it is our position, of course, that this is a clearly established right to be free from retaliation in the workforce. But that's easy. It's just like the Fourth Amendment. You say you can't have unreasonable searches. Supreme Court tells us you can't define it at that high a level of generality. Correct. So in this case, the statute, of course, clearly states that the employee is entitled to be free from retaliation. The Sixth Circuit has held in this context that an adverse action in retaliation is a very low bar to meet in Michael v. Caterpillar Financial Services. And that bar is only an action that would serve to dissuade or discourage an employee from coming forward. A threat of termination would fit in that category. And the court held in Michael v. Caterpillar that just a brief paid suspension and a short performance improvement plan of 90 days was enough to dissuade an employee. In Morris v. Oldham County Fiscal Court, the Sixth Circuit held that termination was clearly established as retaliation and also ongoing acts of harassment in retaliation were clearly established. Why does what Rock Rohr did in this day and a half or so period come within either a specific threat of firing, 90-day suspension, any of those things? You're correct. There is not an explicit statement from the Sixth Circuit that a threat of termination is an adverse action. Why is it even a threat of termination? That is to say maybe you ought to seek other employment, at least to me in query, is you might be happier elsewhere, you might do better elsewhere, but it doesn't say if you stick it out, we're going to fire you. It doesn't say if you don't go, you know, we've had cases where you've got to go apologize to Mr. X who's harassing you or else we're going to fire you. It isn't that either. That's correct. And the standard is what a reasonable person would interpret that to be. And a reasonable employee who is dependent on that livelihood would see his supervisor telling him and his chief, the highest level, telling him that immediately after making a complaint that he should go look for new employment can only by a reasonable employee in that circumstance be interpreted as a threat of termination for having made that complaint. Okay. Is there any kind of statute of limitations problem here or simply they didn't raise it? I mean, it is four years after this incident when, you know, he leaves. And as I read it, and correct me, Rockroar doesn't really, you know, come up after 2012. That's correct. Rockroar ascended to the position of deputy chief, so he was certainly in a high-level leadership position. He didn't do anything himself after that from the record as I read it. That's correct. There is the, quote, tripping incident, which is contemporaneous roughly in 2012. And do you rely on that? Because as I read it, he says, well, there are these three guys, and I don't know who did what. And the other two were guys that he identified as being the ringleaders, right, Daniel and Halsey. Is that all fair? That's correct. Rockroar was present or participated. He wasn't sure who did that. But certainly as a supervisor, he would have had an obligation to step in and take action. With respect to the statute of limitations, the Kentucky Civil Rights Act has a five-year statute of limitations, so there's no statutory issue there. With respect, and I appreciate that we've talked about the CALGA, but CALGA, just to be clear, does only apply to tort actions. The Supreme Court said that in Swindell. The Kentucky Court of Appeals in an unpublished decision, Madden v. City of Louisville in 2004, also held the same, and Judge Thapar, then with the Eastern District, did a detailed analysis of CALGA and again found that it applies only to tort claims in Ackerman Enterprises v. City of Bellevue, which was a position adopted by the Western District of Kentucky in 2017 in Wombles v. City of Mount Washington. So does that, if we buy that particular argument, does that knock out Rockroar's claim completely, that is he has no kind of qualified immunity other than for tort actions? No. I would agree that he can make an argument about qualified immunity under this clearly established. My understanding of their argument is that they made it under both CALGA and the- Okay, fine. That was my point. We would ask, of course, the law on CALGA is very clear that it applies only to tort claims. We are not making any sort of tort claim here, and so CALGA is inapplicable entirely to both the city and the claims against Dustin Rockroar. With respect to the qualified immunity argument, I guess with respect to the city, it is our position that the court simply doesn't have jurisdiction because they are not permitted to even bring that argument. It is the only argument that they made on this appeal, and the case law, both in the Sixth Circuit and the Supreme Court, are clear that that is not a permissible defense for the city. I'd like to go back to the individual immunity point again because that's really what I'm worried about in this case. So whenever your client went in and spoke with Rockroar, is it fair to say you were asking for some remediation within the department, your client was asking for some remediation of this environment? Yes, he wanted some resolution of this situation. And what evidence is there of what your client asked for from Captain Rockroar? I don't know that there's any evidence beyond his testimony that he raised those issues and that Rockroar immediately shut that conversation down and told him he needed to know his place. They did not get to the point. So that's from his deposition around pages 60, 61? That's correct. That's correct. Okay. So that's the evidence you're relying upon to get to a trial? On that particular claim, yes. In its reply brief, this defendant's raised the issue of a Monell argument. That is raised for the first time in its reply, and this Court has been consistent that issues raised for the first time in a reply brief that weren't raised below are not appropriate. However, if the Court does allow that argument, we would argue that Monell applies only to Section 1983 and 1981 claims, neither of which are made here. And this Court, back in 1987, in Kitchen v. Chippewa Valley Schools, held that although Monell might preclude a claim against the Chippewa Valley School District for 1983 claims, it did not preclude liability on a Title VII claim. The Kentucky Civil Rights Act is interpreted constantly with Title VII, and so the city would also not be able to make that Monell argument with respect to this Kentucky Civil Rights claim before. Mr. Queen would ask this Court to deny jurisdiction, to hear the city's interlocutory appeal based on qualified immunity because the city is not entitled to make that argument. We further ask the Court to affirm the District Court's denial of summary judgment to Mr. Rockvor based on his allegations of qualified immunity and perhaps Calga because he violated Queen's clearly established statutory right to be free from retaliation and because Calga does not apply to claims that are statutory in nature. Thank you. If I may briefly, with regard to the claims under the Calga, we respectfully disagree that it only applies to tort, and the language of the statute itself has to control. If we look at KRS 65-2003, it says notwithstanding KRS 65-2001. And then it talks about giving immunity to cities for claims like collection of taxes, workers' compensation, failure to adopt certain laws, failure to enforce laws. It's clear that it applies much more broadly and is a stand-alone statute separate than the other statute that they're referring to that restricts it only to tort. The city has statutory immunity under the Claims Against Local Governments Act. What about the District Court's ruling on that? I think the District Court said Calga didn't apply because of it. This was not a legislative or judicial act. Was that not the reasoning of Judge McKinley? I think what Judge McKinley said was, let's see here. Yes. None of the insurance were in any way related to any judicial or legislative exercise of authority. That's one basis. But they did not discuss discretionary acts. So I think that's too narrow. Their interpretation there, in my estimation, is too narrow because they didn't talk about it. The Claims Against Local Governments Act is broader than that. So the city has statutory immunity for their discretionary acts, just like Rockwell would. I would also mention the Morris case that they referred to, Morris v. Oldham County. In that case, the judge executive, Judge Black was his name, he was granted qualified immunity in a case where there were some pretty egregious allegations, and the lady came and talked to him, and he either didn't report it or didn't report it fast enough to suit her, and the court gave him immunity. Morris v. Oldham County, it's been on the books since 2000, and it grants immunity in just this kind of situation. So in that case, there was this other guy, Likens, who was actually doing the bad stuff, let's call it. Yes. And Black was another level above that, and his discretion was in how to respond. Now, in your case, you've got some things that Rockroar was allegedly doing directly, perhaps the tripping, and other things that he was perhaps deciding how to respond. How would you sort those out? Because Likens didn't get immunity. Likens did not. But Rockroar's part of this claim is 1%, 2% of the entire world that Queen claims was wrong. So I think it's a matter of degree. There is that distinction. Finally, my time is running short, but I would point the court to the cases that I cite on the clearly established law. At the end of the day, Judge McKinley's opinion relied on the complaint and the complaint only, and that is improper on a motion for summary judgment. He didn't even look at the deposition testimony or the exhibits. There were 800 pages of deposition testimony. He doesn't look at it. I'm sorry? Did he say he didn't look at it? No. From his opinion, he did not cite it. He cited it one time. From his opinion, he took the facts from the complaint and the complaint only. And the reason it's important and the reason it's material is it directly contradicts the plaintiff's sworn testimony. That is inferior proof. Attorney-drafted, unverified allegations cannot be relied on when they contradict. The case on that is Cordell v. Overton County. Yes, ma'am. Thank you. Thank you all. We appreciate your argument and we'll consider the case carefully.